|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:14-CR-65(1) |
| | § | |
| BRIDGET BERGERON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Bridget Good Bergeron's ("Bergeron") *pro se* Motion for Early Termination of Supervised Release (#166), wherein she seeks early termination of her five-year term of supervised release. Bergeron's supervising United States Probation and Pretrial Services ("Probation") officer in the Southern District of Texas, Houston Division, is unopposed to the motion. Her Probation officer in the Eastern District of Texas, Beaumont Division, however, is opposed to the motion, noting that "she is now being supervised on a 'low intensity/low threat caseload,' which should require minimal intervention by the probation office but still give her the opportunity to benefit from resources if necessary." The Government is also opposed to Bergeron's request for early termination, expressing the opinion that "supervised release provides the best oportunity for success in reentry." Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Bergeron's motion should be denied.

I.  Background

On June 5, 2014, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a three-count Indictment against Bergeron, charging her in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, in Count Two with Possession with Intent to Distribute a Controlled Substance, in violation of 21

U.S.C. § 841(a)(1), and in Count Three with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). Pursuant to a written, binding plea agreement, Bergeron pleaded guilty to the offense charged in Count One of the Indictment on December 17, 2014. On May 1, 2015, the court sentenced Bergeron in accordance with the plea agreement to a term of 120 months' imprisonment, followed by a five-year term of supervised release. Bergeron began her term of supervised release on February 9, 2022, in the Southern District of Texas, which is projected to expire on February 8, 2027.

In her motion, Bergeron, age 43, asks the court to terminate her supervision at this time, after serving only about two years of her five-year term of supervised release. Bergeron states that she has successfully complied with the terms of her release, has maintained herself as a law-abiding citizen, has completed her monthly check-in as directed without fail, and has had no infractions or write ups during her term of supervised release. She adds that she is a productive member of society, working full-time at Unified Global Solutions since February 2022, and has been promoted to Project Manager and team lead. In addition, Bergeron states that she has established a healthy co-parenting role with her mother to provide a stable household for her youngest daughter.

II.   Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the

2

defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although Bergeron's supervising Probation Officer in the Southern District of Texas does not oppose early termination, the Probation Office in the Eastern District of Texas and the Government are opposed to terminating her supervised release at this time. In any event, this fact, standing alone, is insufficient to justify granting Bergeron's request for early termination of supervised release. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015)

---

need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228, 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No.

4

10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are

irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

Bergeron's offense of conviction entails her participation in a methamphetamine-trafficking conspiracy involving the possession with intent to distribute or the distribution of between 150 and 500 grams of methamphetamine (actual). Officers with the Beaumont Police Department

responded to a disturbance call at the Residence Inn where the hotel staff advised that they suspected that illegal drug and prostitution activity was occurring in Rooms 333 and 335. Codefendant Johnson was staying in Room 333, while Bergeron and Codefendant Rusch were staying in Room 335. When officers went to Room 333, they encountered Johnson who appeared to be under the influence of methamphetamine. A pat-down of Johnson revealed the presence of brass knuckes on his person. Johnson declined to consent to a search of the room, and a narcotics detection dog was brought to the scene. Officers encountered Rusch as he was leaving Room 335 who stated that he had brass knuckles in his pants pocket. When removing the brass knuckles, drug paraphernalia was recovered from his pocket. After officers knocked on the door to Room 335, Bergeron opened the door and allowed them to enter. Bergeron and another individual, David Nolan, were in the room. Bergeron stated that she was staying in the room and showed officers a backpack Johnson had left there which she stated might contain a firearm. A search of the backpack revealed a pistol holster clipped to the outside, a handgun magazine loaded with .40 caliber ammunition, digital scales, plastic baggies, syringes, and a California identification card for Johnson.

A narcotics detection dog searched Room 335 and alerted on a small cosmetic bag in the closet that was lying haphazardly among U.S. currency that was scattered around the closet floor. Several baggies that contained 49.50 grams of methamphetamine (actual) and some Oxycontin pills were found in the cosmetic bag. A small case with a baggie containing .44 gram of methamphetamine (actual) was located under the bed. The narcotics detection dog searched Room 333 and alerted on a backpack containing two high-capacity magazines, .40 caliber ammunition, and an axe sheath containing 4.10 grams of methamphetamine (actual). Officers also found a Hi

Point .40 caliber pistol. Upon Johnson's arrest, officers recovered two baggies containing 3.20 grams of methamphetamine (actual) and several Oxycontin pills in his pants pocket. A total of 57.24 grams of methamphetamine (actual) was seized from the two hotel rooms.

Bergeron admitted that she worked with Rusch, Johnson, and others to traffic "actual" methamphetamine from the Houston area to the Beaumont area of Texas between November 1 and November 25, 2013. She conceded that she intentionally and knowingly conspired with Rusch, Johnson, and others to possess with intent to distribute at least 150 grams but less than 500 grams of actual methamphetamine over the course of the conspiracy.

The Presentence Investigation Report ("PSR") confirms that Bergeron has a significant criminal history beginning at age 19, which includes prior convictions for delivery of cocaine by actual transfer, conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, evading arrest/detention, forgery, and assault-family member (her mother). She was also charged with assaulting her mother on a prior occasion that arose from her purported failure to comply with an agreement that allowed her to live at her mother's home if she would abstain from drugs and leave her employment as a topless dancer. The PSR reveals that Bergeron has three children as well as another child who was placed for adoption. Her employment record reflects long periods of unemployment interspersed with several years of employment at four different topless dancing establishments. The PSR also details Bergeron's history of poly-substance abuse beginning at age 13, including the daily use of marijuana, cocaine, and methamphetamine for extended periods of time, with her methamphetamine use ending only upon her arrest for her offense of conviction in 2014. She has also experienced a series of unsuccessful efforts at rehabilitation. Bergeron tested positive for methamphetamine while serving

a prior term of supervised release and was admitted to a drug treatment facility as a result of that relapse in 2009. Although she completed her term of supervised release in 2010, she resumed using drugs soon thereafter.

In this situation, the court finds that Bergeron's post-release conduct does not warrant early termination of her supervised release. Although Bergeron provides the court with a list of the conditions of release with which she has complied, she identifies no new or exceptional circumstances or needs. At this time, Bergeron has been serving her five-year term of supervised release for only about two years. While Bergeron's success to date should be commended, continuing her on supervision would provide her the best opportunity for success in reentry in view of her risk for recidivism. Requiring Bergeron to complete her entire term of supervised release safeguards against the reoccurrence of criminal activity and drug use, as occurred before. Although she has remained compliant with her drug treatment program to date, she would likely benefit from continued supervision in view of her long struggle with drug use and addiction.

Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Bergeron does not identify any such circumstances in her motion and is instead seeking early termination of her supervision simply for complying with the conditions imposed by the court. As detailed above, Bergeron has a significant criminal history, including three felony drug convictions occurring in 2000, 2007, and 2015. *See Lynn*, 2022 WL 2446328, at *3-4. She failed to comply with a prior term of supervised release stemming from a methamphetamine conspiracy conviction when she once again began using methamphetamine. In this instance, Bergeron has not yet served half of her term of

supervised release. She returned to criminal activity and drug use shortly after the completion of her previous term of supervised release. *See Lynn*, 2022 WL 2446328, at *4-5. Furthermore, Bergeron indicates in her motion that she is now residing with her mother to provide "a healthy stable household for her youngest daughter," adding that her "biggest priority is to continue to be a role model for her and provide a path for her success." The court notes, however, that some of her prior interactions with her mother have been the opposite of "healthy" and "stable." In 2013, Bergeron was convicted of assault-family violence when she caused bodily injury to her mother by throwing a glass at her and striking her. In 1999, Bergeron was arrested and charged with assault when she reportedly began striking her mother with her fists, struck her on the back of the head with a cordless telephone, kicked her in the shins several times, and returned to the living room area to assault her mother again before leaving the residence. This incident allegedly occurred when Bergeron became upset and began cursing when her mother informed her she could no longer live at her house because Bergeron had not complied with an agreement to stop using drugs and cease her employment as a topless dancer. The charges were dismissed the following year at the request of the complaining witness. Under the circumstances, the court questions the continuing viability of Bergeron's co-parenting/residential arrangement with her mother.

   Thus, although Bergeron appears to be on the right path, the court believes that completion of her full term of supervised release appropriately reflects the seriousness of her offense, deters future criminal conduct, and provides needed structure for her continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4 (holding that the serious nature of the defendant's crimes and his history and characteristics significantly outweighed his actions after his release from prison). The court, likewise, is of the opinion that Bergeron's current sentence, including the five-year term of

supervised release, was appropriate at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Given the nature of her offense involving her participation in a methamphetamine-trafficking conspiracy, her criminal history which includes drug offenses and crimes of violence, her failure to comply with a previous term of supervised release, and her long history of poly-substance abuse, the early termination of Bergeron's current term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Bergeron's *pro se* Motion for Early Termination of Supervised Release (#166) is DENIED.

SIGNED at Beaumont, Texas, this 16th day of January, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE